# W. R. CASTLE ·v. W. O. SMITH, EXECUTOR OF THE WILL OF W. L. WILCOX,· DECEASED.

## QUESTION RESERVED BY CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JUNE 15, 1905.          DECIDED OCTOBER 6, 1905.

### FREAR, C.J., HARTWELL AND WILDER, JJ.

PLEADING—*notes not attached to complaint on promise of another than maker to pay them.*

In an action upon an independent oral promise made by one to pay as his own debt certain notes made by another, it is not neces-. sary to attach copies of such notes to the complaint, notwithstanding the provision in Rev. L., Sec. 1721, that copies of vouchers, if any, upon which a complaint is predicated shall be annexed thereto.

STATUTE OF LIMITATIONS—*action on promise to pay notes of another, and foreclosure of mortgage, not barred, though action on notes barred.*

An action may be maintained upon an independent oral promise made by one to pay the notes of another, even though an action upon the notes was barred when the action was brought or when the promise was made.

An action upon the notes may be barred without the right to foreclose the mortgage given to secure the notes being barred.

REASONABLE TIME, CONDITION PRECEDENT—*promise to pay when deed procured, held promise to pay within reasonable time and not upon condition.*

A promise to pay the notes of another when the promisor should procure a deed of the property mortgaged to secure the notes, is held under the circumstances to be a promise to pay within a reasonable time,—the procuring the deed being referred to not as a condition precedent to liability but as indicating the time when payment should be made. An action on the promise may be brought after the lapse of a reasonable time if the deed is not procured or if it cannot be procured owing to the death of the promisor.

CONSIDERATION—*forbearance, reasonable time.*

> Forbearance to foreclose is a good consideration for a promise by one to pay the mortgage of another; and if no time is fixed for the forbearance it will be construed to be for a reasonable time

STATUTE OF FRAUDS—*when promise to pay debt of another not required to be in writing.*

> A promise by one to pay the debt of another is not within the statute of frauds when it is made mainly for the business purposes of the promisor and the consideration for it moves to the promisor or inures or is intended to inure to his benefit, even though the original indebtedness may continue and performance of the new promise will result incidentally in the extinguishment of such indebtedness. Such promise is deemed original and independent as distinguished from collateral, and the liability created thereby is regarded as the debt of the promisor, and not of the original debtor. If the consideration for such promise is forbearance, it seems that there should be a promise to forbear as well as forbearance in fact, but such promise may be implied as well as express.

### OPINION OF THE COURT BY FREAR, C. J.

The question reserved is whether the demurrer to the complaint should be sustained or overruled. The action is assumpsit for $765.44, the balance alleged to be due upon a promise by the defendant's decedent to pay to the plaintiff the amount of certain notes, secured by mortgage, made by one Kupihea to H. N. Castle, but which, it is alleged, were in fact the property and made for the benefit of the plaintiff. It is alleged that one of these notes was made August 10, 1885, for $500, and that after certain payments of interest thereon the other note was made February 10, 1892, for $100, and that it was agreed that it should be secured by the same mortgage; also that said Kupihea died July 6, 1899, without having made any further payment of either interest or principal on either note; and that the defendant's decedent died July 12, 1903. The complaint then continues as follows:

"That prior to the decease of said Kupihea the said W. L. Wilcox represented to the plaintiff that said Kupihea was a relative of his wife and that he was desirous of having the land

turned over to him and would endeavor to have the aforesaid notes p'aid. That this plaintiff was then preparing to foreclose said mortgage and at the request of and for the benefit of the said Wilcox agreed to postpone foreclosure on condition that the said Wilcox should pay the accrued interest at the rate of Fifty Dollars ($50) per month until paid. That after the death of said S. K. Kupihea plaintiff thereupon was proceeding to foreclose said mortgage when the said W. L. Wilcox stated to the plaintiff that he was in possession of said land and was cultivating the same with taro or was receiving the products of said land and enjoying the beneficial interest therein at his poi factory and that the said Wilcox desired to secure ownership of the premises and if foreclosure would be delayed he would pay the mortgage as his own debt as soon as he could get title to the property and would pay the interest which was overdue. That in pursuance of said latter agreement on or about the 30th day of June, 1900, said W. L. Wilcox paid Three Hundred and Thirty Dollars ($330) being five and one-half (5½) years interest on said Five Hundred Dollars ($500) mortgage, and Fifty Dollars ($50) being four (4) years and two (2) months interest on said One Hundred Dollar ($100) note, and thereafter made sundry payments on account of the interest on both of said notes and promised repeatedly to the plaintiff to pay both the principal and interest stating that he would soon get a deed of the property which he was very anxious to get and that if the foreclosure were delayed he would surely pay the principal, but that he was not desirous of paying it until he had got a deed to the property and at the request of said Wilcox plaintiff refrained from foreclosing said mortgage relying upon said promise. That subsequently to the death of said Wilcox plaintiff has foreclosed s'aid mortgage and realized upon said foreclosure the sum of Sixty-one and 76-100 dollars ($61.76) ; and that plaintiff by reason of delaying said foreclosure has been damaged in the sum of Seven Hundred and Sixty-five Dollars and forty-four cents ($765.44)."

This action was begun April 3, 1905.

The demurrer is based upon five grounds, each of which will be considered briefly.

1. "That no copies of the alleged notes are attached to the complaint as is by law required." The law referred to is section 1721 of the Revised Laws, which provides that every sum-

mons issued under the seal of a court of record shall be served upon the defendant by the delivery to him of a certified copy thereof and of the plaintiff's petition, "to which petition shall always be annexed a literal copy of the voucher upon which it is predicated, (if any there be)," etc. The petition in the present case, however, is not predicated upon the notes in question but, as will appear more clearly hereafter, upon the independent oral promise of the defendant's decedent to pay the amount of the notes as his own debt, such amount being the measure of his indebtedness.

2. "That said notes are barred by the statute of limitations." The action, as already stated, is not upon the notes but upon the independent promise of the defendant's decedent, and it is alleged that that promise was made after the death of Kupihea, which occurred July 6, 1899, and therefore within six years before the commencement of this action. It is immaterial that an action upon the notes was barred, if such were the case, before the promise to pay them, upon which this action is based, was made.

3. "That the promise under which Wilcox is alleged to have assumed the payment of said notes was conditioned upon procuring a deed of said lands to him from Kupihea, which deed, it is not alleged, was ever obtained by Wilcox." The question is whether procuring a deed of the land was intended to be a condition precedent to liability for the debt or whether that was mentioned merely as the time when the debt would be paid. If the promisor's liability was to be conditional upon procuring the deed, the condition was never performed, and never can be performed, owing to the promisor's death, and no cause of action has arisen, but, if, as we hold, procuring the deed was referred to merely to fix the time of payment as a matter of convenience to the promisor, it was his duty to procure the deed within a reasonable time and he could not escape liability by failing to do so, and in case of a contingency by which the deed could never be procured, payment should be made within a reasonable time. There is no doubt that the plaintiff sets forth facts suffi-

cient to show that a reasonable time has elapsed. It is clear from the allegations of the complaint that procuring a deed was not intended as a condition precedent to the attachment of liability on the part of the promisor. It is alleged that he promised to pay the mortgage "as his own debt as soon as he could get title to the property" and afterwards promised "to pay both the principal and interest stating that he would soon get a deed of the property which he was very anxious to get and that if the foreclosure were delayed he would surely pay the principal, but that he was not desirous of paying it until he had got a deed to the property." Under such circumstances payment must be made within a reasonable time. See *Nunez v. Dautel,* 19 Wall. 560; *Crooker v. Holmes,* 65 Me., 195; *Williston v. Perkins,* 51 Cal. 554; *Noland v. Bull,* 24 Ore. 479; *Harris v. Weirick,* 155 Ind. 548; *Alvord v. Cook,* 174 Mass. 120; *Hood v. Hampton P. Ex. Co.,* 106 Fed. 408; *Crass v. Scruggs,* 115 Ala. 258 (22 So. 81); *Culver v. Caldwell,* 137 Ala. 132 (34 So. 15); *Rioux v. Ryegate Brick Co.,* 72 Vt. 154.

4. "That there was no legal consideration alleged in said complaint for the assumption by said Wilcox of the payment of said notes." In the defendant's brief this ground is confused to a large extent with the next ground, under which the question is suggested whether, if there is a legal consideration, it is sufficient to take the promise out of the statute of frauds. It will be considered here without reference to the statute of frauds. That forbearance is or may be a legal consideration needs no citation of authority. In this case the plaintiff forebore to foreclose the mortgage at the defendant's decedent's request and in reliance upon his promise to pay and, even if forbearance to sue upon the notes would not have been a legal consideration for the reason that an action upon them was barred by the statute of limitations, forbearance to foreclose the mortgage would be a legal consideration, for that was not barred. See *Kaikainahaole v. Allen,* 14 Haw. 527. It is true that no definite time was fixed for the duration of the forbearance but in such case it should be for a reasonable time. *Macfarlane v. Sumner,* 1 Haw. 364;

*Howe v. Taggart,* 133 Mass. 284; *Moore v. McKinney,* 83 Me. 80; *Streeter v. Smith,* 31 Minn. 52; *Shadburne v. Daley,* 76 Cal. 355; *Edgerton v. Weaver,* 105 Ill. 43. This is an application of the general rule that where no time is fixed for the performance of a contract the law implies a reasonable time. *Magnin v. Furgie,* 4 Haw. 467.

5. "That no promise in writing is alleged for the payment of said notes and that the alleged promise of Wilcox for the payment of the same is within the statute of frauds, and is not binding unless in writing." This is the principal point relied upon by the defendant. The contention is that this action is brought upon a "special promise to answer for the debt, default or misdoings of another," within the meaning of our statute of frauds. Rev. Laws, Sec. 1996. Just what promises are within this clause of the statute is a question upon which there is much difference of opinion. Various tests have been adopted by different courts to distinguish between promises within and those without this provision. The fundamental distinction, so far as the present case is concerned, would seem to be whether the promise is to pay the debt of the promisor or the debt of another. The difficulty lies in ascertaining whether the debt is that of the promisor or that of the original debtor. It will be unnecessary to state the various theories or to enter upon a discussion of the numerous conflicting decisions. These theories will be found set forth and many of the cases cited in the text books. See, for example, 2 Page, Contracts, Sec. 611 *et seq.;* Harriman, Contracts, Sec. 578 *et seq.;* 29 Am. & Eng. Enc. of L. 927 *et seq.* If the defendant's promise is original or absolute or primary or independent, as it is variously expressed, and not merely collateral to the obligation of the original debtor, it is not within the statute. This distinction has been recognized by this court in cases in which, unlike the present case, the defendant's promise was made at or before the incurrence of the suppposd original or primary indebtedness. *Clark & Henery v. Hackfeld & Co.,* 16 Haw. 53; *Hackfeld & Co. v. Wilson,* 13 *Id.* 212. It is clear that the mere continued existence of the original debt will not prevent the new

oral promise from being effective. It is equally clear that the mere fact that there is a new consideration for the new promise made subsequently to the incurrence of the original indebtedness is not sufficient to take the new promise out of the statute. The decided weight of authority is also against the theory that the new promise, in order to be without the statute, must be absolute in the sense that the promisor's liability will continue even though the liability of the original debtor ceases to exist, although much can be said in support of that theory. The theory that seems to receive most support in point of authority is that in order to take the new promise out of the statute, it is necessary that the new consideration should move not only from the promisee, which is the ordinary test of a legal consideration (see 2 Langdell's Cases on Contracts, Summary, Secs. 62 *et seq.*), but also that it must move to the new promisor or at least result in or be intended to be a pecuniary benefit to him. In applying this theory much stress is laid upon what may be regarded as the main purpose of the new promisor. If that is to secure some pecuniary benefit to himself it goes far to show, and is generally considered practically conclusive, that the new promise was intended to be primary upon his part and not merely collateral to the liability of the original promisor. This test has been subject to more or less criticism on account of its indefiniteness and elasticity, although it is the test that is now applied by most courts. A leading case in support of this theory is *Emerson v. Slater,* 22 How. 28, which was followed by the same court in the later case of *Davis v. Patrick,* 141 U. S. 479, in which the court says, among other things :

"Whenever the alleged promisor is an absolute stranger to the transaction, and without interest in it, courts strictly uphold the obligations of this statute. But cases sometimes arise in which, though a third party is the original obligor, the primary debtor, the promisor has a personal, immediate and pecuniary interest in the transaction, and is therefore himself a party to be benefited by the performance of the promise. In such cases the reason which underlies and which prompted this statutory provision fails, and the courts will give effect to the promise. As

said by this court in *Emerson v. Slater,* 22 How. 28, 43: 'Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.' To this may be added the observation of Browne, in his work on the statute of frauds, section 165: 'The statute contemplates the mere promise of one man to be responsible for another, and cannot be interposed as a cover and shield against the actual obligations of the defendant himself.' The thought is, that there is a marked difference between a promise which, without any interest in the subject matter of the promise in the promisor, is purely collateral to the obligation of a third party, and that which, though operating upon the debt of a third party, is also and mainly for the benefit of the promisor."

It is sometimes stated, mainly on the strength of *Furbish v. Goodnow,* 98 Mass. 296, that what is called the Massachusetts rule is more restricted, and that under that rule in order to prevent the promise from falling within the statute the consideration must move to the promisor and amount to a relinquishment by the promisee of some lien, right or benefit under the original obligation and the assignment or transfer thereof to the new promisor, and that it is not sufficient that the new promsior should receive some pecuniary advantage and make the promise with that advantage as his main object. It is doubtful, however, if the Massachusetts decisions support that statement. It would seem that the present case at any rate is within the Massachusetts rule as set forth in *Fears v. Story,* 131 Mass. 47, in which a promise made by the purchaser of a vessel to pay a lien incurred upon it by a previous owner, in consideration that the holder of the lien would forbear to enforce the same, but without any relinquishment of the lien or transfer thereof to the new owner, was held sufficient to prevent the promise from falling within the statute. The holder of the lien, as the holder of the mortgage in the present case, relinquished the right to foreclose

immediately, and this inured to the advantage of the owner of the vessel by enabling him to go to sea, just as in the present case forbearance inured to the benefit of the new promisor by enabling him to continue in the possession and cultivation of the mort-gaged land and take such steps as he desired in order to procure a deed of the property, although he failed to procure the deed before his death. It is obvious from the allegations of the com-plaint that the defendant's decedent made the promise for his own advantage and not merely as collateral to the liability or for the benefit of the original debtor.

It is generally held also that forbearance alone without an agreement to forbear is not a sufficient consideration to keep the promise out of the statute, even though the forbearance was induced by such promise; but such agreement may be implied as well as expressed. *Manter v. Churchill,* 127 Mass. 131, and cases there cited. The complaint in the present case sets forth facts sufficient to justify the inference of a promise. We do not mean to say that a promise as well as forbearance is always nec-essary in order to constitute a consideration of this nature, although, of course, forbearance alone, in order to constitute a consideration, would have to be undergone as a consideration and not merely voluntarily, and, of course, if the forbearance was to be perpetual, there would have to be a promise to forbear, for otherwise the consideration could never be fully performed. 2 Langdell's Cases on Contracts, Summary, Secs. 56-59. But, as already stated, a promise, express or implied, to forbear is generally held necessary, even though the forbearance is to be only for a reasonable time, when forbearance is relied on as a consideration to take an oral promise to answer for the debt of another out of the statute of frauds.

In our opinion the demurrer to the complaint should be over-ruled and the circuit judge is advised accordingly.

*Castle & Withington* for plaintiff.

*Magoon & Lightfoot* for defendant.